Mrs. Alberta SCARBROUGH

v.

MURROW TRANSFER COMPANY and Billy Ray Burge

v.

UNITED STATES of America.

Claud NOLAN

v.

MURROW TRANSFER COMPANY and Billy Ray Burge

v.

UNITED STATES of America.

Nos. 5852, 5854.

United States District Court E. D. Tennessee, N. D.

Nov. 2, 1967.

Yancey & Butler, Knoxville, Tenn., for plaintiffs.

Arnett & Draper, J. H. Reddy, U. S. Atty., Knoxville, Tenn., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

FRANK W. WILSON, District Judge.

These are two lawsuits which arose out of a single motor vehicle accident. The plaintiff in each case seeks to recover for the alleged wrongful death of the plaintiff's decedent. A third-party action was filed by the defendants and third-party plaintiffs against the United States of America seeking to recover indemnity and/or contribution of the third-party defendant. The cases were consolidated for trial, with both cases being tried together and with the third-party action in each case being heard along with the original action. The cases have now been tried by the Court sitting without a jury and the Court makes the following findings of fact and conclusions of law based upon the record in the trial.

### Findings of Fact

(1) The plaintiff, Mrs. Alberta Scarbrough, is a citizen and resident of Meridian, Mississippi, and is the mother of Randolph Scarbrough, who died upon September 17, 1966, under the circumstances hereinafter set forth. The said plaintiff seeks to recover damages in

excess of $10,000.00 from the defendants, Murrow Transfer Company and Billy Ray Burge, for the alleged wrongful death of Randolph Scarbrough.

(2) The plaintiff, Claud Nolan, is a citizen and resident of Palmer, Tennessee, and is the father of Jimmy Ray Nolan, who died upon September 17, 1966, under the circumstances hereinafter set forth. The plaintiff seeks to recover damages in excess of $10,000.00 from the defendants, Murrow Transfer Company and Billy Ray Burge, for the alleged wrongful death of Jimmy Ray Nolan.

(3) The defendant, Murrow Transfer Company (Murrow Transfer, Inc.), is a corporation organized under the laws of the State of North Carolina and having its principal place of business at High Point, North Carolina.

(4) The defendant, Billy Ray Burge, is a citizen and resident of Trinity, North Carolina.

(5) The United States of America is properly before the Court upon a third-party complaint wherein Murrow Transfer Company and Billy Ray Burge, each a third-party-plaintiff, seek to recover indemnity and/or contribution from the United States as third-party defendant in event the said parties should be held liable unto the original plaintiffs.

(6) Randolph Scarbrough, a 19 year old young Negro man, met his death upon September 17, 1966, in the motor vehicle accident hereinafter described. He had been a member of the United States Job Corps for approximately six months prior to his death. At about 12:15 a. m. on Saturday morning, September 17, 1966, he was riding as a passenger in a bus belonging to the United States Job Corps and being driven at the time by Robert Lee Wakefield, a Job Corps Supervisor.

(7) Jimmy Ray Nolan, a 17 year old young white man, also met his death upon September 17, 1966, in the same accident. He had been a member of the Job Corps for only six days at the time of his death. At about 12:15 a. m. on Saturday, September 17, 1966, he, too, was riding as a passenger in the United States Job Corps bus being driven by Robert Lee Wakefield.

(8) Mr. Wakefield was driving the Job Corps bus at the time in the course and scope of his employment as a supervisor with the United States Job Corps. He was returning to the Job Corps camp in Middlesboro, Kentucky, from Knoxville, Tennessee, with 22 passengers aboard, each a member of the Job Corps. They had all spent the day at the fair in Knoxville as a part of the Job Corps activities and program. Immediately prior to the accident the Job Corps bus was being driven in a northerly direction upon U. S. Highway 25E and had arrived at a point about three miles north of Tazewell, Tennessee.

(9) At this same time and place, the defendant, Billy Ray Burge, was driving a tractor-trailer in a southerly direction upon U. S. Highway 25E, acting in the course and scope of his employment with the defendant, Murrow Transfer Company, the owner of the tractor-trailer unit.

(10) At the point where the accident occurred, U. S. Highway 25E is a two-lane blacktop highway having a white center line marking. The highway at the scene of the accident runs generally in a northerly and southerly direction and is relatively straight and level for a considerable distance in either direction from the point of impact, there being a depression in the road some 600 or more feet south of the scene of the accident and the highway having a very gradual curve north of the scene of the accident.

(11) As the two vehicles proceeding in opposite directions upon the highway converged, the bus was travelling at a speed of about 45 miles per hour and the tractor-trailer unit was travelling at about the same speed or at a slightly higher speed. The driver of the tractor-trailer had then been on the road for some 30 hours with a total of only some five or six hours sleep upon two occasions. There is evidence that he may have momentarily dozed off just prior

to the accident. In any event, the Court is of the opinion that the evidence establishes rather clearly that at a time when the vehicles were some 600 to 750 feet apart, the tractor-trailer unit crossed the center line into the lane for northbound traffic and continued in that lane until just prior to the accident. As the vehicles thus converged in the northbound lane, the operator of the bus, faced with a sudden emergency by the presence of the tractor-trailer unit converging upon him upon his side of the highway, applied his brakes and attempted to cut to his left to avoid a collision. The sudden application of the brakes and the turning movement caused the bus to tip over on its right side. Almost immediately thereafter, and while the bus lay on its right side extending completely across the southbound traffic lane and with the rear of the bus extending some five feet or more across the northbound lane, the tractor-trailer unit struck the bus at a point upon the rear portion of the top of the overturned bus and at or near the center line of the highway. Immediately prior to the accident, the driver of the tractor-trailer unit had also attempted to brake his vehicle and cut back to his proper side of the road, but he had only partially completed this movement when the accident occurred. At the point of impact the tractor unit was in the approximate center of the road, with the major portion of the trailer unit still in the southbound lane.

(12) As a direct and proximate result of the accident, Randolph Scarbrough and Jimmy Ray Nolan received injuries which resulted in their death either instantly or within a short time after the collision. Neither Randolph Scarbrough nor Jimmy Ray Nolan suffered any conscious pain prior to his death.

(13) Randolph Scarbrough was 19 years old at the time of his death. He was born on July 27, 1947, and was one of a family of seven children. His father is a construction worker and his mother, in addition to keeping house, does housework for others. The family resided in Meridian, Mississippi, throughout Randolph Scarbrough's lifetime. The decedent was in good health prior to the fatal accident and was a normally athletic person for his age. He dropped out of school in the tenth grade through a combination of circumstances, including a below average school record and limited abilities for academic work. Following his leaving school, he worked irregularly at odd jobs as a laborer. He had one conviction for breaking into a school and committing a petty theft. He joined the United States Job Corps in the spring of 1966 and had completed six months training at the time of his death. He appears to have made an above average record in the Job Corps and had demonstrated both initiative and industry, but had not acquired any specialized skill at the time of his death. There is evidence he intended to take further training in welding. There is also evidence in the record that from 50% to 80% of those leaving the Job Corps, varying directly with the length of their training, are placed in employment and that they earn from $1.46 per hour to $1.78 per hour on the average, depending upon the number of months they receive training, ranging from three months up to 18 months. Randolph Scarbrough had a life expectancy at his death of 46 years and a work life expectancy of 43 years. The preponderance of the evidence would indicate that he was capable of working and earning a living at manual labor or in jobs requiring limited skills. Funeral expenses in the sum of $693.28 were incurred as a result of his death.

(14) Jimmy Ray Nolan was 17 years old at the time of his death. He was born on February 20, 1949, and was one of a family of 13 children. His father was for many years a coal miner. Before joining the Job Corps, the decedent lived with his parents in a rural section of Grundy County, Tennessee. He had normal health, but had limited abilities and dropped out of school in the ninth grade. He appears to have been a young man who had always behaved himself and he bore a good reputation in this

regard in his neighborhood. Following his leaving school, he did odd jobs, including some painting in a government sponsored program, earning $1.25 per hour. He had just joined the Job Corps six days prior to his death. He had a life expectancy of 52 years and a work life expectancy of 44 years. He appears to have been capable of working and earning a living at manual labor or at jobs requiring limited skills. Funeral expenses in the sum of $718.19 were incurred as a result of his death.

### Conclusions of Law

(1) The Court has jurisdiction of the parties and of these causes of action, there being diversity of citizenship between the parties and the jurisdictional amount being involved in each case.

■■ (2) The defendant, Billy Ray Burge, was guilty of negligence proximately causing the accident here involved in that he was driving his tractor-trailer at a time when he was not fully alert, in that he failed to keep a proper lookout ahead, in that he failed to keep his vehicle under proper control and in that he drove his vehicle upon the wrong side of the highway immediately prior to the accident, thereby forcing the driver of the bus to take steps to avoid the accident. The negligence of the defendant, Billy Ray Burge, would be imputed unto the defendant, Murrow Transfer Company, Inc., upon the principle of respondeat superior.

(3) The plaintiffs' decedents, Randolph Scarbrough and Jimmy Ray Nolan, were free of any contributory negligence and no such contention is made on behalf of the defendants in this regard.

■ (4) The driver of the Job Corps bus, Robert Lee Wakefield, was not guilty of any negligence which proximately caused or contributed to cause the accident and the death of the plaintiffs' decedents. He was confronted with a sudden emergency by the action of Billy Ray Burge in driving upon the wrong side of the highway and he acted in a reasonably prudent manner under the circumstances thereby confronting him.

■ (5) The Court is of the further opinion that the third-party plaintiffs, Billy Ray Burge and Murrow Transfer Company, Inc., would not in any event be entitled to recover either indemnity or contribution of the third-party defendant, the United States of America. There could be no common liability unto the original plaintiffs herein on the part of the United States of America both by reason of the fact that the driver of the Job Corps bus was himself free of negligence in the accident and by reason of the fact that no common tort liability could exist on the part of the United States in any event, as the sole and exclusive remedy, in any action against the United States arising out of the death of the plaintiffs' decedents, would be under the Federal Employees Compensation Act. Since the deaths of Randolph Scarbrough and Jimmy Ray Nolan occurred in the performance of their duties as members of the United States Job Corps, the remedy for making any claim against the United States for their deaths would lie under the Federal Employees Compensation Act, 5 U.S.C.A. § 8102. This remedy would be exclusive and would exclude any tort liability on behalf of the United States, 5 U.S.C.A. § 8116(c). This being a diversity action, Tennessee law would govern in determining whether the third-party plaintiffs would have an action for either contribution or indemnity against the United States. While an action for contribution and/or indemnity will lie in Tennessee as between joint tortfeasors, Huggins v. Graves, D.C., 210 F. Supp. 98, no such action will lie in the absence of a common tort liability unto the injured party. Smith v. Illinois Central Railroad Company, D.C., 263 F. Supp. 70; Chamberlain v. McClary, D.C., 217 F.Supp. 591. The third-party action will accordingly be dismissed.

■ (6) The plaintiff, Mrs. Alberta Scarbrough, is entitled to recover the sum of $28,000.00 of the defendants, Billy Ray Burge and Murrow Transfer

Company, Inc., as damages for the wrongful death of Randolph Scarbrough. The plaintiff, Claud Nolan, is entitled to recover the sum of $28,000.00 of the defendants, Billy Ray Burge and Murrow Transfer Company, Inc., as damages for the wrongful death of Jimmy Ray Nolan.

A judgment will enter in each case in accordance with these findings of fact and conclusions of law.