Ralph E. CAZAD, Appellee,

v.

CHESAPEAKE AND OHIO RAILWAY COMPANY, a corporation, Appellant,

v.

UNION OIL COMPANY OF CALIFORNIA, a corporation, Appellee.

No. 78–1393.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 1, 1979.

Decided May 9, 1980.

Fred Adkins, Huntington, W. Va. (Donald G. Powers, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, W. Va., on brief), for appellant.

Norman K. Fenstermaker, Huntington, W. Va. (Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, W. Va., on brief), for appellee, Union Oil Co. of California.

Donald L. Rudquist, Minneapolis, Minn. (DeParcq, Anderson, Perl, Hunegs & Rudquist, Minneapolis, Minn., Lawrence J. Lewis, Levy & Lewis, Huntington, W. Va., on brief), for appellee, Ralph E. Cazad.

Before RUSSELL, Circuit Judge, FIELD, Senior Circuit Judge, and HALL, Circuit Judge.

FIELD, Senior Circuit Judge:

The plaintiff, Ralph E. Cazad, filed this action against the Chesapeake and Ohio Railway Company (C&O) under the Federal Employer's Liability Act (FELA), 45 U.S.C. § 51 *et seq.*, alleging that he had been injured as a result of the negligent failure of the C&O to provide a safe place to work. A jury returned a verdict in favor of Cazad

and awarded him $284,000 in damages. Judgment was entered on the jury's verdict and the C&O has appealed.

Cazad was employed as a motor car mechanic for the C&O and on the day of his injury he had been directed by his supervisor to go to Cabin Creek, West Virginia, to repair a tamping machine which had been vandalized. Cazad was accompanied by the operator of the tamper, Frederick Holbrook, and they found the machine located on C&O tracks just outside a gate leading to a sidetrack of the Union Oil Company of California (Union Oil). After making partial repairs, Holbrook moved the tamper through the gate onto the property of Union Oil in order to get it closer to Cazad's truck. The gate was unlocked by a key which was in the possession of the C&O. When the repairs had been completed Holbrook moved the machine further down the tracks where he discovered that one of the hydraulic jacks was malfunctioning. It was determined that an "air lock" was causing the malfunction and Cazad removed the hydraulic line from its fitting in order to "bleed" the line. In doing so, he stepped back from the machine to avoid being sprayed by oil and fell into an uncovered drain culvert located about four to six feet from the track. The culvert itself was approximately three by four feet wide and three feet deep. As a result of the fall, Cazad sustained serious and disabling injuries.

In its answer the C&O denied any negligence on its part and alleged that the plaintiff's injuries were caused solely by his own negligence. In addition, the C&O filed a third-party complaint against Union Oil, charging that any injuries to the plaintiff were caused by the negligence of Union Oil,

and that C&O was entitled to recover from Union Oil any sums which the C&O might be required to pay to the plaintiff. The complaint asserted that this claim was based upon the law of West Virginia as well as a provision for indemnity and/or contribution contained in a sidetrack agreement between C&O and Union Oil which covered the use of the premises on which Cazad was injured.[1] In particular, C&O relied upon paragraph 9 of the sidetrack agreement which reads:

> As between the parties hereto, each party shall assume and be responsible for all liability for injury to or death of persons and for loss of or damage to property and all liability therefore when arising from or caused by the negligence of its officers, employees, agents, lessees, licensees, contractors or subcontractors, and when arising from or caused by the concurring negligence of the officers, employees, agents, lessees, licensees, contractors, or subcontractors of both parties hereto, all such liability, loss or damage shall be assumed and borne equally by the parties hereto.

At the conclusion of the plaintiff's evidence the district court dismissed the third-party complaint against Union Oil, holding that the C&O had no right of indemnity under the sidetrack agreement and that under West Virginia law there was no right of contribution upon the facts of this case.[2] Upon appeal the C&O contends that the district court erred in dismissing the third-party complaint against Union Oil, and that the evidence failed to show any negligence on its part. Additionally, C&O urges that certain instructions given by the trial court were improper and require reversal.

1. The sidetrack agreement was originally entered into between C&O and the Pure Oil Company. The Pure Oil Company merged into Union Oil and all rights, privileges, and responsibilities under the agreement vested in Union Oil.

2. The district court found the language of paragraph 9 to be ambiguous, noting that it makes no direct reference to "indemnity" whereas "indemnity" was specifically used in paragraph 7

of the sidetrack agreement. (Paragraph 7 only applies when the railroad is engaged in switching activities.) Accordingly, the agreement was construed in favor of Union Oil, the non-drafting party.

Moreover, the court held that there is no right to contribution in West Virginia absent a joint judgment. W.Va.Code § 55–7–13; *Baltimore & Ohio R.R. Co. v. Saunders*, 159 F.2d 481 (4 Cir. 1947).

–I–

■ For C&O to recover from Union Oil under the sidetrack agreement or any other theory, it must be established that the plaintiff's injuries were caused in whole or in part by the negligence of Union Oil. On this point C&O contends that since it was found to be negligent, it necessarily follows that Union Oil was negligent, since Cazad concededly was injured on the property of Union Oil. The flaw in this argument, however, is that any negligence on the part of Union Oil must be determined under the common law of West Virginia, where as C&O's negligence under the FELA is to be determined as a matter of federal law interpreting and implementing the Act. *Kennedy v. Pennsylvania Railroad Co.*, 282 F.2d 705 (3 Cir. 1960).[3]

■ As to Union Oil's responsibility, it is well established in West Virginia that although a landowner must maintain his property in a reasonably safe condition, he has no duty to warn persons of dangerous conditions which are open and obvious, nor is he required to take steps to obviate such hazards. *Burdette v. Burdette*, 147 W.Va. 313, 127 S.E.2d 249 (1962). The evidence presented in the district court demonstrated beyond question that the drain culvert on Union Oil's property constituted an open and obvious hazard under the *Burdette* standard. Under these circumstances, the conclusion is inescapable that, as a matter of law, the plaintiff's injuries were not caused by any negligence on the part of Union Oil. Accordingly, it was not error to dismiss the third-party complaint against it.

■ C&O's liability under the FELA, however, is a different matter, for it had the nondelegable duty to provide Cazad and its other employees with a safe place to work even when their duties required that they go onto property owned by a third party. *Shenker v. Baltimore & Ohio Railroad Co.*, 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963); *Chesapeake & Ohio Railway Co. v. Thomas*, 198 F.2d 783 (4 Cir. 1952), *cert. den.* 344 U.S. 921, 73 S.Ct. 387, 97 L.Ed. 709 (1953). This duty includes the responsibility to inspect the premises where its employees will be working and to take reasonable precautions to protect its employees from possible danger. *Carter v. Union Railroad Co.*, 438 F.2d 208 (3 Cir. 1971). Under the evidence in this case it is apparent that an inspection of the premises would have revealed the existence of the hazard which the drain culvert presented, and although the danger was not hidden from the plaintiff, there was, as noted by the district court, sufficient evidence to support the conclusion that Cazad had been distracted by the performance of his work when he fell into the culvert. In going about his duties, Cazad had a right to assume that C&O had taken reasonable precautions to eliminate potential hazards at the work site. *Williams v. Atlantic Coast Line R. Co.*, 190 F.2d 744, 748 (5 Cir. 1951). In our opinion, there was sufficient evidence of negligence on the part of C&O to carry the case to the jury for, as the Court has stated, "the test of a jury case [under the FELA] is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury * * * for which damages are sought." *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957), *rehearing den.* 353 U.S. 943, 77 S.Ct. 808, 1 L.Ed.2d 764 (1957).

–II–

■ The cause must be remanded, however, for error by the district court in its instruction on damages. The defendant re-

---

3. This marked difference in the basis for liability, one resting upon a federal statute and the other upon the common law, has been recognized by courts who have countenanced third-party complaints under Rule 14, Federal Rules of Civil Procedure. *Waylander-Peterson Co. v. Great Northern Ry. Co.*, 201 F.2d 408 (1953). *See United States v. Yellow Cab Co.*, 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951). Recognizing the complexities incident to these divergent theories of liability, a court in this circuit declined to entertain such a complaint under Rule 14. *Railey v. Southern Railway Company*, 31 F.R.D. 519 (E.D.S.C.1963). *See also Kennedy v. Pennsylvania Railroad Company*, 282 F.2d 705 (3 Cir. 1960).

quested the district court to instruct the jury as follows:

"You are charged that any award made to plaintiff as damages in this case, if any award is made, is not subject to federal or state income taxes, and you should not consider such taxes in fixing the amounts of any award made to plaintiff, if any you make."

The requested instruction was refused. Since trial in the district court the Supreme Court in *Norfolk & Western Railway Co. v. Liepelt*, (1980) —— U.S. ——, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), has held that such an instruction was proper in a FELA case and ordered reversal of judgment in that case for failure to give the instruction. That decision is controlling in this FELA case and mandates reversal.

The judgment below is accordingly reversed and the case is remanded to the district court for proceedings consistent with this opinion.

REVERSED and REMANDED.