**Romolo SALAMON, Plaintiff,**

v.

**MOTOR VESSEL POLING BROS. NO. 11, INC., Defendant.**

**MOTOR VESSEL POLING BROS. NO. 11, INC., Third–Party Plaintiff,**

v.

**AUTOMATIC COMFORT CORP., Third–Party Defendant.**

**No. 87 C 3369.**

United States District Court, E.D. New York.

Nov. 14, 1990.

Max Cohen, New York City, for plaintiff.

Healy & Baillie (John P. James and Andrew V. Buchsbaum, of counsel), New York City, for defendant and third-party plaintiff.

Carol A. Young, Uniondale, N.Y., for third-party defendant.

MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff Romolo Salamon brought this action against defendant Motor Vessel Poling Bros. No. 11, Inc. (Poling) for personal injuries, asserting claims both for unseaworthiness and for negligence under the

Jones Act, 46 U.S.C.App. § 688. Poling impleaded third-party defendant Automatic Comfort Corp. (Automatic Comfort).

On June 2, 1989 Judge McLaughlin, to whom the case had been assigned, denied Automatic Comfort's motion to dismiss the third-party complaint for lack of personal jurisdiction. Plaintiff then filed an amended complaint seeking damages from both Poling and Automatic Comfort and asserting diversity of citizenship between plaintiff and Automatic Comfort.

On December 21, 1989 Poling moved for an order pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure dismissing the action against Poling. Plaintiff cross-moved for summary judgment against Poling. All the motion papers were filed by April 25, 1990, and the motion was marked on Judge McLaughlin's calendar as submitted.

In November of 1990 the case was assigned to this judge.

## I.

On December 21, 1986, the Poling's vessel was docked in East Hartford, Connecticut, and was delivering petroleum products to Automatic Comfort. Plaintiff, the cook on the Vessel, had given the crew their supper and left the vessel at about 6:15 P.M. to go shopping for groceries. He proceeded across the dock for about 300 feet and started to climb the only exit from the dock, that is, the stairway leading up to the shore. He says that it was dark and that when he was about three or four feet above ground level he slipped and fell, sustaining injuries.

Automatic Comfort owns, occupies, and maintains the dock facility including the stairway, built more than twenty years before and located entirely on land.

Poling contends that plaintiff may not recover under the theory of negligence under the Jones Act or under the doctrine of unseaworthiness because the stairway was not part of the vessel's equipment and because Poling neither owned nor exercised control over the stairway.

Plaintiff says that the only way he could get from the vessel to go shopping was to go up the stairway. He claims the steps on the stairway were uneven and worn down, with sharp edges. He says that after his injury he found oil on his clothes. The vessel's searchlight, which in the past had been used to light docks to enable the vessel to secure lines, was not lit. Plaintiff says: "There is no doubt in my mind that said searchlight could have been used to light up the stairway which was to be used by me to get ashore."

Plaintiff does not claim that the searchlight was broken or that, on the numerous occasions he had used the stairway on previous dockings, the searchlight had been used to light up the stairway.

## II.

A ship owner's duty with respect to seaworthiness is a duty to furnish a vessel reasonably fit for its intended use, fitted out with proper equipment in good order, and carrying a qualified crew and officers. *The Osceola*, 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760 (1903).

In *Gutierrez v. Waterman Steamship Corp.*, 373 U.S. 206, 213, 83 S.Ct. 1185, 1190, 10 L.Ed.2d 297 (1963), the Supreme Court described the "essence" of the seaworthiness doctrine to be "that things about a ship, whether the hull, the decks, the machinery, the tools furnished, the stowage, or the cargo containers, must be reasonably fit for the purpose for which they are to be used."

"[T]he owner's duty to furnish a seaworthy ship is absolute and completely independent of his duty under the Jones Act to exercise reasonable care." *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549, 80 S.Ct. 926, 932, 4 L.Ed.2d 941 (1960); *see also The H.A. Scandrett*, 87 F.2d 708, 711 (2d Cir.1937) (per A.N. Hand). The liability for unseaworthiness "is essentially a species of liability without fault" and is "[d]erived from and shaped to meet the hazards which performing the service imposes." *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 94, 66 S.Ct. 872, 877, 90 L.Ed. 1099 (1946).

A ship that fails to furnish the seamen with seaworthy appliances is absolutely liable under the doctrine of unseaworthiness. The fact that a ship's officer negligently furnishes a seaman with a defective appliance when suitable ones are available does not relieve the ship of that liability. *Mahnich v. Southern S.S. Co.*, 321 U.S. 96, 100–101, 64 S.Ct. 455, 458, 88 L.Ed. 561 (1944).

■ But to recover for unseaworthiness the plaintiff must prove that something about the ship was not reasonably fit for its intended purpose. *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 210–211, n. 11, 92 S.Ct. 418, 424, n. 11, 30 L.Ed.2d 383 (1971). Here plaintiff presents nothing to show that anything about the ship or its equipment or appliances was defective. Indeed, he says that the unbroken searchlight "could have been used to light up the stairway." He makes no claim the crew and officers were unqualified.

At most plaintiff has made out that the ship's personnel failed to use the searchlight so as to avert the accident caused by the alleged defect in a stairway owned, maintained, and controlled not by Poling but by Automatic Comfort. That is not enough to show liability for unseaworthiness.

### III.

■ The claim for damages for negligence stands on a different footing. The Jones Act, 46 U.S.C.App. § 688, gives seamen suffering personal injury in the course of their employment the right to maintain an action for damages against their employer and extends to them the remedies railroad workers have under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. That act makes a railroad liable to its employees for injuries "resulting in whole or in part from the negligence" of its agents or employees.

The Supreme Court has interpreted the Federal Employers Liability Act to impose on a railroad the duty to provide its employees "with a safe place to work even when they are required to go onto the premises of a third party over which the railroad has no control." *Shenker v. Balti-*

*more and Ohio Railroad Company*, 374 U.S. 1, 7, 83 S.Ct. 1667, 1671–72, 10 L.Ed.2d 709 (1963). Moreover, this duty includes the responsibility to inspect those premises and "to take reasonable precautions to protect its employees from possible danger." *Cazad v. Chesapeake & Ohio Railway Co.*, 622 F.2d 72, 75 (4th Cir.1980).

It would be unreasonable to impose a duty on Poling to inspect plaintiff's route all the way to the grocery store and back and to take precautions over the entire way. But here, according to plaintiff, the stairway was only some 300 feet from the vessel and was the sole means by which plaintiff could reach the shore so as to fulfill his responsibility as cook to obtain more food. The vessel had on numerous occasions docked in the same place, and its officers were familiar with the stairway. Plaintiff states that he has no doubt that the searchlight could have been used to light up the defective stairway he had to use.

This is enough to raise an issue of fact as to whether Poling was negligent and failed to take reasonable precautions to protect plaintiff.

Polings's motion is granted to the extent that the claim of unseaworthiness is dismissed. That motion is otherwise denied. Plaintiff's motion is denied. So ordered.